IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | <u>S U P E R S E D I N G</u> |
| | ) | <u>I N D I C T M E N T</u> |
| | ) | |
| v. | ) | Case No. 3:08-cr-88 |
| | ) | |
| | ) | Violation: 21 U.S.C. §§ 846, |
| JUAN SILLAS-ROCHA, | ) | 848(a), 848(b)(1), 848(b)(2)(A), |
| a/k/a JUANILLO SILLAS, | ) | 848(c), 848(e)(1)(A), 848(s), |
| a/k/a MAURICIO, a/k/a RUEDAS | ) | and 18 U.S.C. § 2 |

<u>COUNT ONE</u>

**Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substances**

The Grand Jury Charges:

From on or about January 1, 2002, and continuously until the date of this Superseding Indictment, in the District of North Dakota, and elsewhere,

JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS,
a/k/a MAURICIO, a/k/a RUEDAS,

did knowingly and intentionally combine, conspire, confederate, and agree together with Jorge Manuel Arandas, a/k/a Sneaky, et al., previously indicted and convicted in the District of North Dakota, Southeastern Division, Case No. 3:06-cr-14, Michael Alan Petzold, a/k/a MP, a/k/a Mike Jones, et al., previously indicted and convicted in the District of North Dakota, Southeastern Division, Case No. 3:05-cr-101, and others, both known and unknown to the grand jury, to possess with intent to distribute and distribute in excess of 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; in excess of 5,000 grams of a

mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance; and in excess of 1,000 kilograms of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

## Overt Acts

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts:

1. It was a part of said conspiracy that the defendant and others would and did possess with intent to distribute and did distribute in excess of 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, within the states of North Dakota, Minnesota, Nebraska, Washington, California, and elsewhere;

2. It was further a part of said conspiracy that the defendant and others would and did possess with intent to distribute and did distribute in excess of 5,000 grams of cocaine, a Schedule II controlled substance, and in excess of 1,000 kilograms of marijuana, a Schedule I controlled substance, within the states of North Dakota, Minnesota, Nebraska, Washington, California, and elsewhere;

3. It was further a part of said conspiracy that the defendant and others would and did attempt to conceal their activities;

4. It was further a part of said conspiracy that the defendant and others would and did use telecommunication facilities;

5. It was further a part of said conspiracy that the defendant and others would and did use United States currency in their drug transactions;

6. During the course of said conspiracy, members of the conspiracy, both known and unknown to the grand jury, transferred and arranged the transfer of methamphetamine, cocaine, and marijuana from Mexico, Washington, California, and elsewhere to the Red River Valley area in North Dakota and to other parts of the United States for distribution;

7. It was further a part of said conspiracy that the defendant and others would and did use violence and the threat of violence to promote their drug trafficking activities, including, but not limited to, murder, kidnapping, and assault;

8. During the course of and to further said conspiracy, members of the conspiracy, through the use of money wires, transferred, received, and arranged to have United States currency transferred and received to and from various locations;

9. It was further a part of said conspiracy that motor vehicles were exchanged for controlled substances;

10. It was further a part of said conspiracy that firearms were exchanged for controlled substances;

11.  During the course of this conspiracy in excess of 15 kilograms (15,000 grams) of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, was distributed by members of the conspiracy;

In violation of Title 21, United States Code, Section 846; <u>Pinkerton v. United States</u>, 328 U.S. 640 (1946).

COUNT TWO

**Continuing Criminal Enterprise**

The Grand Jury Further Charges:

From on or about January 1, 2002, and continuously until the date of this Superseding Indictment, in the District of North Dakota, and elsewhere,

JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS,
a/k/a MAURICIO, a/k/a RUEDAS,

did knowingly and intentionally engage in a Continuing Criminal Enterprise, in that he did violate Title 21, United States Code, Sections 841(a)(1) and 846, including, but not limited to, the violations alleged in Count One of this Superseding Indictment. Count One is incorporated herein by reference.

During the course of the enterprise, JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, emerged as a high-ranking member of the Arellano-Felix Drug Trafficking Organization, which continues, as of the date of this Superseding Indictment, to be led by Fernando Sanchez-Arellano, a/k/a Ingeniero.

During the course of the enterprise, JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, was involved in the supervision of crews that were involved in drug trafficking. JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, was also involved in the supervision of crews that participated in murder, attempted murder, kidnapping, human trafficking,

5

public corruption of government officials, money laundering, and other illegal conduct designed to further the goal of enriching the members of the enterprise.

The above-described violations were, and are, part of a continuing series of felony drug trafficking violations which include, but are not limited to:

a. JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, on multiple and separate occasions, personally distributed or aided and abetted the distribution of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, to indicted and unindicted co-conspirators in North Dakota, and elsewhere in the United States, during the time frame of the enterprise.

b. JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, on multiple and separate occasions, personally distributed or aided and abetted the distribution of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, to indicted and unindicted co-conspirators in North Dakota, and elsewhere in the United States, during the time frame of the enterprise.

c. JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, on multiple and separate occasions, personally distributed or aided and abetted the distribution of a mixture and substance containing marijuana, a Schedule I controlled substance, to indicted and unindicted co-conspirators in North Dakota, and elsewhere in the United States, during the time frame of the enterprise.

This continuing series of violations was undertaken by JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, in concert with at least five other persons with respect to whom defendant JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, occupied a position of organizer, supervisor, and manager, including, but not limited to, the following individuals:  (1) Loretto Alvarado; (2) Guadalupe Higuerra-Gutierrez, a/k/a Lupio; (3) Quelino Elenes, a/k/a Lino; (4) Octavio Leal, a/k/a Chapito; (5) Teodulo Andrade-Espinosa; (6) Guadalupe Becerra Herrera; (7) Jaime Gomez-Colorado; (8) Jose Angel Flores Ayala, a/k/a El Pepe; (9) Jesus Javier Avitia Gonzalez, a/k/a El Avitia; (10) Juan Carlos Aldama Beltran, a/k/a El Juanito; (11) Mauricio Herrera Guzman, a/k/a El Gordo; (12) Carlos Humberto Gomez Flores; (13) Ismael Castro; (14) Jose Benjamin Gonzalez Martinez, a/k/a El Muerto; (15) Emanuel Hernandez Pinedo, a/k/a El Gordo; (16) Victor Manuel Alfani Avalos, a/k/a El Alfani; (17) Roberto Diaz Bastida, a/k/a El Yenco; (18) Jorge Sillas-Rocha; (19) Francisco Manzo Moran, a/k/a El Billy, a/k/a Manzo; (20) Chorey, a/k/a Shorty; (21) Rata; (22) Jabo, a/k/a Jablito; (23) Compa Beto; (24) Marquitos; (25) Danny Cepallo; (26) Victor Gonzalez; (27) I.M.; (28) Julio Cesar Cruz-Melendrez, a/k/a Pocho; (29) Guadalupe Castro-Navarette, a/k/a El Doc; and (30) Luis Leonardo Rocha-Ramirez, a/k/a El Prino, a/k/a El Primo, a/k/a Pantera.

From this continuing series of violations, JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, obtained substantial income.

As part of this Continuing Criminal Enterprise, in excess of 15 kilograms (15,000 grams) of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, was distributed by the enterprise;

In violation of Title 21, United States Code, Sections 848(a), 848(b)(1), 848(b)(2)(A), 848(c), and 848(s).

COUNT THREE

**Conspiracy to Commit Murder in Furtherance of a Continuing Criminal Enterprise**

On or about February 1, 2011, through February 17, 2011, in the Southern District of California, and elsewhere,

JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS,
a/k/a MAURICIO, a/k/a RUEDAS,

while engaging in and working in furtherance of a Continuing Criminal Enterprise and while engaging in a controlled substance offense punishable under 21 U.S.C. § 841(b)(1)(A), to wit: Continuing Criminal Enterprise as alleged in Count Two of this Superseding Indictment and conspiracy to possess with intent to distribute and distribute controlled substances, as alleged in Count One of this Superseding Indictment, did knowingly and intentionally combine, conspire, confederate, and agree together with Jorge Sillas, Danny Cepallo, and Victor Gonzalez to cause the intentional killing of L.L. and I.Z.

Overt Acts

In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts:

1. On or about February 1, 2011, JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, contacted a person by phone who was an informant for the government (hereafter CI) and requested that CI find a hit squad to murder two California residents;

2. On or about February 1, 2011, JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, contacted CI by phone and further discussed details about the plot to kill the two California residents;

3. On or about February 1, 2011, JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, contacted CI by phone and informed him that SILLAS-ROCHA had offered to pay members of the Logan Heights criminal street gang $25,000 to commit the murders and had paid them a $4,000 deposit, however, the Logan Heights gang members could not find the victims, so JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, wanted the CI to find new assassins;

4. On or about February 1, 2011, JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, contacted CI by phone and told CI to drive north on Interstate 15 to Victorville, California, and exit at Bear Valley Road, where SILLAS-ROCHA's brother would give CI "paperwork" for the intended male victim;

5. On or about and between February 1, 2011, and February 2, 2011, Jorge Ernesto Sillas Rocha, Victor Magana Gonzalez, and Danny Cepallo drove in a 2004 Dodge Stratus to the planned meeting location;

6. On or about and between February 1, 2011, and February 2, 2011, Jorge Ernesto Sillas-Rocha, Victor Magana Gonzalez, and Danny Cepallo surveilled the area on Bear Valley Road prior to meeting the CI;

7. On or about and between February 1, 2011, and February 2, 2011, Jorge Ernesto Sillas-Rocha gave an envelope to CI containing a photograph of the intended male murder victim;

8. On or about and between February 1, 2011, and February 2, 2011, Jorge Ernesto Sillas-Rocha gave an envelope to CI containing directions to the intended male victim's residence;

9. On or about and between February 1, 2011, and February 2, 2011, Victor Magana Gonzalez and Danny Cepallo acted as lookouts while Jorge Ernesto Sillas-Rocha met with CI;

10. On or about and between February 1, 2011, and February 2, 2011, after the meeting on Bear Valley Road, JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, contacted CI by phone and said that he would pay $50,000 if the murders could be done soon;

11. On or about February 3, 2011, JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, contacted CI by phone and told him the first name of the intended female murder victim and that JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, was going to call his brother, Jorge Ernesto Sillas-Rocha, to deliver a photograph of the woman to CI;

12. On or about February 3, 2011, JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, contacted CI and authorized CI to set up a

meeting with Jorge Ernesto Sillas-Rocha to receive further information to accomplish the murders;

13. On or about and between February 3, 2011, and February 4, 2011, Jorge Ernesto Sillas-Rocha contacted CI by phone and made arrangements to deliver a photograph of the intended female victim to CI in San Diego, California;

14. On or about February 5, 2011, Jorge Ernesto Sillas-Rocha directed CI by phone to the meeting location in the city of Oceanside, San Diego County, where CI would be given the photograph of the intended female victim;

15. On or about February 5, 2011, Victor Gonzalez met CI in the city of Oceanside, San Diego County, and handed CI a photograph of a female and stated that this was the photograph of the female that JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, wanted murdered in California;

16. On or about February 5, 2011, JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, contacted CI by phone and ordered him to make the murders happen the following day and to kill everyone except the disabled girl;

17. On or about and between February 6, 2011, and February 8, 2011, JUAN SILLAS-ROCHA, a/k/a JUANILLO SILLAS, a/k/a MAURICIO, a/k/a RUEDAS, ordered CI by phone to kill the entire family inside their home;

18. On or about and between February 6, 2011, and February 8, 2011, CI spoke to Victor Gonzalez by phone and informed him that the intended victims had not been seen

at the residence all week. Victor Gonzalez acknowledged this and handed the phone to Jorge Ernesto Sillas-Rocha, who continued the conversation about the plot to kill the victims;

19. On or about and between February 6, 2011, and February 8, 2011, Jorge Ernesto Sillas-Rocha and CI discussed finding the intended victims and Jorge Ernesto Sillas-Rochas stated that he would send someone to the residence to locate the intended victims;

In violation of Title 21, United States Code, Sections 846 and 848(e)(1)(A), and Title 18, United States Code, Section 2.

                                  A TRUE BILL:

                                  /s/ Grand Jury Foreperson
                                  Foreperson

/s/ Timothy Q. Purdon
TIMOTHY Q. PURDON
United States Attorney

CCM:ld